UNITED STATES, Appellee

v.

Gregory P. BANKER, Staff Sergeant
U.S. Air Force, Appellant

No. 03-0128

Crim. App. No. 34531

_____

United States Court of Appeals for the Armed Forces

Argued October 2, 2003

Decided August 23, 2004

BAKER, J., delivered the opinion of the Court, in which
CRAWFORD, C.J., GIERKE and ERDMANN, JJ., joined.  EFFRON, J.,
filed a separate opinion concurring in part and the result.



Counsel

For Appellant:  Captain Antony B. Kolenc (argued); Colonel
   Beverly B. Knott, and Major Terry L. McElyea (on brief).

For Appellee:  Captain C. Taylor Smith(argued); Colonel
   LeEllen Coacher, Lieutenant Colonel Lance B. Sigmon,
   Captain Matthew J. Mulbarger (on brief); Lieutenant
   Colonel Robert V. Combs.

Amicus Curiae:  Margaret A. Olsen (law student)(argued);
   Nancy Lawler Dickhute, Esq. (supervising attorney)(on
   brief) – for the Creighton University Law School.


Military Judge: Gregory E. Pavlik

THIS OPINION IS SUBJECT TO EDITORIAL CORRECTION BEFORE FINAL PUBLICATION

United States v. Banker, No. 03-0128/AF

Judge BAKER delivered the opinion of the Court.

Appellant was tried by a general court-martial composed of officer and enlisted members at Sheppard Air Force Base, Texas. Contrary to his pleas, Appellant was convicted of sodomy with a child under the age of 16 years on divers occasions, sodomy on divers occasions, indecent acts with a child under the age of 16 years on divers occasions, indecent acts on divers occasions, and adultery on divers occasions in violation of Articles 125 and 134, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. §§ 925, 934 (2000), respectively. Appellant was found not guilty of carnal knowledge under Article 120, UCMJ, 10 U.S.C. § 920 (2000). The adjudged and approved sentence provided for a bad-conduct discharge, confinement for two years, and reduction to the lowest enlisted grade.

We granted review of the following issues:[1]

I

WHETHER THE AIR FORCE COURT OF CRIMINAL APPEALS ERRED BY FINDING THAT MIL.R.EVID. 412 APPLIES TO CONSENSUAL SEXUAL MISCONDUCT, AN INTERPRETATION THAT DIRECTLY CONTRADICTS THE FINDING OF THE COAST GUARD COURT OF CRIMINAL APPEALS IN UNITED STATES V. STIREWALT, 53 M.J. 582 (C.G. CT. CRIM. APP. 2000).

_____

[1] We heard oral argument in this case at Creighton University School of Law, Omaha, NE, as part of the Court's "Project Outreach." See United States v. Mahoney, 58 M.J. 346, 347 n.1 (C.A.A.F. 2003).

II

WHETHER THE MILITARY JUDGE ERRED BY USING MIL.R.EVID.
412 TO EXCLUDE EVIDENCE CONCERNING THE ALLEGED
VICTIM'S MOTIVE TO FABRICATE ALLEGATIONS AGAINST
APPELLANT WHERE MIL.R.EVID. 412 DOES NOT APPLY TO
CONSENSUAL SEXUAL MISCONDUCT AND THE PROFERRED DEFENSE
EVIDENCE WAS CONSTITUTIONALLY REQUIRED.

We conclude that neither the Court of Criminal Appeals
(CCA) nor the military judge erred.

BACKGROUND

In December 1994, LG, who was 14 years old, began
babysitting for Appellant and his wife. Appellant was 34
years old at the time and had a nine-year old son (MB) and
a five-year old daughter. Appellant and his family resided
in on-base housing at Sheppard Air Force Base during most
of the years LG babysat. LG babysat for the Bankers on a
regular basis and participated in other family activities
such as attending dinner and church.

In early 1995, Appellant initiated sexual contact with
LG. While driving her home one evening after babysitting,
Appellant parked the car, pretended to be lost, and kissed
LG sticking his tongue in her mouth. Appellant's physical
contact with LG steadily increased as he would deliberately
brush his hand against her breasts and buttocks when they
passed in a hallway or doorway. Appellant also introduced
LG to pornography by showing her magazines, pictures on his

computer, and videotapes. Over time, Appellant progressed to more overt indecent acts including oral and anal sodomy and sexual intercourse. LG considered the relationship with Appellant to be consensual testifying, "I thought that this was a consensual relationship".

Appellant's sexual contact with LG continued until July 1999. During that summer, LG saw the movie "American Pie" and was disturbed by the movie's portrayal that some men were preoccupied "with getting [females'] virginity." LG later asked Appellant whether the portrayal was accurate and Appellant confirmed that, at least for him, it was true. Upset by Appellant's response, LG stopped engaging in sexual acts with Appellant and subsequently quit babysitting for the Bankers.

LG eventually told a friend about her sexual relationship with Appellant and the friend convinced LG to tell her mother. Upon learning of Appellant's conduct, LG's mother insisted on informing the authorities. As a result, the Air Force Office of Special Investigations (AFOSI) investigated Appellant's activities. Although LG initially minimized Appellant's conduct when interviewed by an AFOSI agent, she later revealed the details of his acts.

During trial, Appellant moved pursuant to Military Rule of Evidence 412(b)(1)(c) [hereinafter M.R.E.] to offer

4

evidence of LG's alleged sexual behavior with Appellant's son MB, who was 13 years old at the time of trial. Appellant sought to admit MB's allegations in an attempt to prove that LG had a motive for fabricating the accusations against Appellant. Appellant further argued that excluding MB's testimony violated Appellant's constitutional rights. The military judge subsequently held a closed hearing where both LG and MB testified.

The only testimony presented at the hearing regarding LG's purported sexual behavior was the testimony of MB. Despite defense counsel's claim that MB's testimony was relevant to attack LG's credibility, the military judge found the evidence not relevant.

ISSUE I

M.R.E. 412 states:

> Rule 412. Nonconsensual sexual offenses; relevance of victim's behavior or sexual predisposition
> (a) <u>Evidence generally inadmissible</u>.
> The following evidence is not admissible in any proceeding involving alleged sexual misconduct except as provided in subdivisions (b) and (c):
> (1) Evidence offered to prove that any alleged victim engaged in other sexual behavior.
> (2) Evidence offered to prove any alleged victim's sexual predisposition.
> (b) <u>Exceptions</u>.
> (1) In a proceeding, the following evidence is admissible, if otherwise admissible under these rules:

5

     (A) evidence of specific instances of sexual behavior by the alleged victim offered to prove that a person other than the accused was the source of semen, injury, or other physical evidence;

     (B) evidence of specific instances of sexual behavior by the alleged victim with respect to the person accused of the sexual misconduct offered by the accused to prove consent or by the prosecution; and

     (C) evidence the exclusion of which would violate the constitutional rights of the accused.

   . . . .

(c) <u>Procedure to determine admissibility</u>.

(3) If the military judge determines on the basis of the hearing described in paragraph (2) of this subdivision that the evidence that the accused seeks to offer is relevant and that the probative value of such evidence outweighs the danger of unfair prejudice, such evidence shall be admissible in the trial to the extent an order made by the military judge specifies evidence that may be offered and areas with respect to which the alleged victim may be examined or cross-examined.

   . . . .

(e) A "nonconsensual sexual offense" is a sexual offense in which consent by the victim is an affirmative defense or in which the lack of consent is an element of the offense.  This term includes rape, forcible sodomy, assault with intent to commit rape or forcible sodomy, indecent assault, and attempts to commit such offenses.

  M.R.E. 412 is modeled after Federal Rule of Evidence 412 [hereinafter Fed. R. Evid.].  Like the federal rule,

6

United States v. Banker, No. 03-0128/AF

M.R.E. 412 was intended to "safeguard the alleged victim against the invasion of privacy and potential embarrassment that is associated with public disclosure of intimate sexual details and the infusion of sexual innuendo into the fact-finding process." Manual for Courts-Martial, United States (2002 ed.) [hereinafter MCM], Analysis of the Military Rules of Evidence [hereinafter Drafter's Analysis] at A22-36. "By affording victims protection in most instances, the rule encourages victims of sexual misconduct to institute and to participate in legal proceedings against alleged offenders." Notes of Advisory Committee on proposed 1994 amendment, F.R.E. 412, 28 U.S.C.S. Appx 412 at 87. M.R.E. 412 was intended to protect victims of sexual offenses from the degrading and embarrassing disclosure of intimate details of their private lives while preserving the constitutional rights of the accused to present a defense. See United States v. Sanchez, 44 M.J. 174, 178 (C.A.A.F. 1996); MCM, Drafter's Analysis at A22-36.

Appellant maintains, however, that M.R.E. 412 is not applicable to his case since the rule only applies to nonconsensual sexual offenses and he was not charged with any nonconsensual sexual offenses. In making this argument, Appellant relies on the title to the rule,

7

"nonconsensual sexual offenses," as well as the presence within the text of a definition of "nonconsensual sexual offense." M.R.E. 412(e). Furthermore, the Coast Guard court in Stirewalt, 53 M.J. at 587, found that M.R.E. 412 only applies when there is an alleged victim of a nonconsensual sexual offense.

Despite the Coast Guard court's ruling in Stirewalt, the Air Force Court of Criminal Appeals determined in this case that the 1998 amendments to M.R.E. 412 "changed the focus of the question of the substantive applicability of the rule from the nature of the alleged sexual misconduct to the status of the person against whom the evidence is offered pursuant to M.R.E. 412. The question is whether the person is a victim of alleged sexual misconduct, not whether the alleged sexual misconduct is nonconsensual." United States v. Banker, 57 M.J. 699, 703 (A.F. Ct. Crim. App. 2002). Specifically, in 1998, M.R.E. 412 was amended substituting within the text of the rule the phrase "alleged sexual misconduct" in lieu of "nonconsensual sexual offense." This amendment reflected the 1995 amendments to Fed. R. Evid. 412. Violent Crime Control and Law Enforcement Act of 1994 § 40141, Pub. L. No. 103-322, 108 Stat. 1796, 1918-19 (1994).

Nonetheless, the title and definition at the end of M.R.E. 412 still refer to "nonconsensual sexual offenses." As a result, Appellant's argument warrants further analysis.

M.R.E. 412 defines a nonconsensual sexual offense as "a sexual offense in which consent by the victim is an affirmative defense or in which the lack of consent is an element of the offense. This term includes rape, forcible sodomy, assault with intent to commit rape or forcible sodomy, indecent assault, and attempts to commit such offenses." M.R.E. 412(e). Significantly, the list of offenses cited within the rule is presented as an inclusive rather than an exclusive list. Moreover, courts have interpreted the rule in this manner.[2] As importantly, the Drafter's Analysis makes clear M.R.E. 412 was intended to apply broadly because "[t]here is thus no justification for limiting the scope of the Rule, intended to protect human dignity and to ultimately encourage the reporting and prosecution of sexual offenses, only to rape and/or assault

---

[2] Although consent is not an element of carnal knowledge because victims of the crime are legally incapable of consent, carnal knowledge is the type of offense contemplated by M.R.E. 412(e) which was intended to be broader in its application than the federal rule. See MCM, Drafter's Analysis at A22-36; see also United States v. Vega, 27 M.J. 744, 746 (A.C.M.R. 1988), rev. denied, 28 M.J. 336 (C.M.A. 1989).

with intent to commit rape." MCM, Drafter's Analysis at A22-36.

In our view, the 1998 amendment to M.R.E. 412 was intended to shift the focus of the rule to the presence and protection of a victim rather than the nature of the sexual conduct. This intent is reflected in the Manual for Courts-Martial as well as case law. See Vega, 27 M.J. at 746; see also Sanchez, 44 M.J. at 177-78. The analysis of the rule explains, "The terminology 'alleged victim' is used because there will frequently be a factual dispute as to whether the sexual misconduct occurred. Rule 412 does not, however, apply unless the person against whom the evidence is offered can reasonably be characterized as a 'victim of alleged sexual misconduct.'" MCM, Drafter's Analysis at A22-36.

As amended, M.R.E. 412 is not limited to nonconsensual sexual offenses, but applies to proceedings involving alleged sexual misconduct. As a result, we conclude, as did the CCA, that following the 1998 amendments, the applicability of M.R.E. 412 hinges on whether the subject of the proferred evidence was a victim of the alleged sexual misconduct and not on whether the alleged sexual misconduct was consensual or nonconsensual. Therefore, as a threshold matter, we must determine whether the CCA

10

appropriately classified LG as a victim of Appellant's sexual misconduct.

Appellant asserts LG consented to the sexual activity in light of her testimony that "the relationship was consensual." This Court, however, has distinguished between factual and legal consent where children are involved. See United States v. Baker II, 57 M.J. 330, 335 (C.A.A.F. 2002). In Baker II, a case involving a 15 year old and an 18 year old Airman who engaged in factually consensual sexual activity, this Court concluded that prior to determining the decency of the acts or whether legal consent existed, the court must consider the child's age, relationship with the accused, and the nature of the sexual acts. Id. at 335-36. Thus, this Court declined to adopt a per se rule regarding the age an individual can consent to certain forms of sexual activity. Id. "[T]here is no magic line of demarcation between decent acts and indecent acts based precisely on the age of the sex partner." Id. at 335(quoting United States v. Strode, 43 M.J. 29, 32 (C.A.A.F. 1995)). However, while the Baker II Court concluded that a child under the age of 16 may factually consent to certain sexual activity, this Court has never recognized the ability of a child to legally consent to sexual intercourse or sodomy.

11

At the time Appellant's sexual activity began with LG, LG was 14 years old.  Appellant was 34 years old.  Although the UCMJ does not explicitly provide an age of consent for sodomy or indecent acts, the age of consent for sexual intercourse is 16.  Arts. 120, 125, UCMJ.  Because both sodomy and sexual intercourse with a child under the age of 16 are indecent acts involving penetration, we conclude that LG was not capable of legally consenting to Appellant's conduct.

As a result, based on the facts of this case and the purpose behind M.R.E. 412, we conclude LG was a "victim" of the sexual misconduct for which Appellant was found guilty.  Therefore, Appellant's proffer of MB's testimony falls within the scope of M.R.E. 412.  The question remains, however, whether MB's testimony was admissible in light of the rule's relevancy and balancing requirements.

ISSUE II

A.    Factual Context

During the military judge's closed hearing to adjudicate Appellant's M.R.E. 412 motion, MB testified that LG began sexually molesting him during her first year of babysitting when MB was nine years old.  According to MB, LG molested him approximately 60 times and continued to abuse him until she stopped babysitting for the family in

12

July 1999. MB initially disclosed these allegations during a counseling session he attended following his inappropriate sexual behavior with his cousins, his sister, and his mother. MB revealed these allegations eight months after Appellant's conduct with LG was reported to AFOSI. The military judge denied admission of MB's testimony under M.R.E. 412 after finding the evidence not relevant.

During the trial, Appellant's counsel argued that MB's testimony was relevant because it went "directly to [LG's] credibility and motive to fabricate." On appeal, Appellant maintains LG's allegations of sexual abuse against Appellant were made in an effort to protect her from future allegations involving her sexual misconduct with MB. Appellant further contends on appeal that LG made this preemptive strike so that any allegations by MB would be considered suspect and disregarded as not credible.

B.   Legal Context

M.R.E. 412 in popular nomenclature is a "rape shield law." As noted above, its purpose is to protect alleged victims of sexual offenses from undue examination and cross-examination of their sexual history. Thus, M.R.E. 412 is a rule of exclusion. Although Fed. R. Evid. 412 is generally understood to address evidence of sexual propensity, M.R.E. 412 is broader in its reach than its

federal counterpart.  See MCM, Drafter's Analysis at A22-35(stating that "[a]lthough substantially similar in substantive scope to Federal Rule of Evidence 412, the application of [M.R.E. 412] has been somewhat broadened and the procedural aspects of the Federal Rule have been modified to adapt them to military practice").  Under M.R.E. 412, not only is evidence of the alleged victim's sexual propensity generally inadmissible, evidence offered to prove an alleged victim engaged in "other sexual behavior" is also generally excluded.

However, this rule is not absolute because there are three exceptions to M.R.E. 412.  First, evidence of specific instances of sexual conduct is admissible to prove that a person other than the accused was the source of semen, physical injury, or other physical evidence.  M.R.E. 412(b)(1)(A).  Second, evidence of specific instances of sexual behavior by the alleged victim with the accused may be offered to prove consent.  M.R.E. 412(b)(1)(B) expressly contemplates that such evidence might be offered by an "accused to prove consent or by the prosecution."  Id.

"[E]vidence the exclusion of which would violate the constitutional rights of the accused" is also admissible as the third exception to the rule.  M.R.E. 412(b)(1)(C).  This exception addresses an accused's Sixth Amendment right

of confrontation and Fifth Amendment right to a fair trial. Weinstein's Federal Evidence, § 412.03[4] [a] (2d ed. 2003). The text itself, however, is presented in the form of legal conclusion rather than analytic framework. As a result, where evidence is offered pursuant to this exception, it is important for defense counsel to detail an accused's theory of relevance and constitutional necessity.

In order to overcome the exclusionary purpose of M.R.E. 412, an accused must "demonstrat[e] why the general prohibition in [M.R.E.] 412 should be lifted to admit evidence of the sexual behavior of the victim[.]" United States v. Moulton, 47 M.J. 227, 228 (C.A.A.F. 1997). In particular, the proponent must demonstrate how the evidence fits within one of the exceptions to the rule. Id. at 228-29. In light of the important and potentially competing constitutional and privacy claims incumbent in M.R.E. 412, the rule requires a closed hearing to consider the admission of the evidence. Among other things "[t]he victim must be afforded a reasonable opportunity to attend and be heard" at this closed hearing. M.R.E. 412(c)(2).

Based on the evidence presented at the closed hearing, the military judge applies a two-part process of review to determine if the evidence is admissible. M.R.E. 412(c)(3). First, pursuant to M.R.E. 401, the judge must determine

whether the evidence is relevant. Evidence is relevant if it has "any tendency to make the existence of any fact . . . more probable or less probable than it would be without the evidence." M.R.E. 401. Where the military judge determines that evidence is relevant, the judge employs a second analytic step by conducting a balancing test to determine whether "the probative value of such evidence outweighs the danger of unfair prejudice[.]" M.R.E. 412(c)(3). The accused has a right to put on testimony relevant to his theory of defense. However, "the right to present relevant testimony is not without limitation. The right may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." Michigan v. Lucas, 500 U.S. 145, 149 (1991)(citations omitted).

Although this two-part relevance-balance analysis is applicable to all three of the enumerated exceptions, evidence offered under the constitutionally required exception is subject to distinct analysis. Under M.R.E. 412(b)(1)(c), the accused has the right to present evidence that is "relevant, material, and favorable to his defense." United States v. Dorsey, 16 M.J. 1, 5 (C.M.A. 1983)(citing United States v. Valenzuela-Bernal, 458 U.S. 858(1982)). While the relevancy portion of this test is the same as

16

that employed for the other two exceptions of the rule, if the evidence is relevant, the military judge must then decide if the evidence offered under the "constitutionally required" exception is material and favorable to the accused's defense, and thus whether it is "necessary." United States v. Williams, 37 M.J. 352, 361 (C.M.A. 1993)(Gierke, J., concurring).

In determining whether evidence is material, the military judge looks at "the importance of the issue for which the evidence was offered in relation to the other issues in this case; the extent to which this issue is in dispute; and the nature of the other evidence in the case pertaining to this issue." United States v. Colon-Angueira, 16 M.J. 20, 26 (C.M.A. 1983)(quoting Dorsey, 16 M.J. at 6).

After determining whether the evidence offered by the accused is relevant and material, the judge employs the M.R.E. 412 balancing test in determining whether the evidence is favorable to the accused's defense. While the term "favorable" may not lend itself to a specific definition, we believe that based on Supreme Court precedent and our own Court's rulings in this area, the term is synonymous with "vital." Valenzuela-Bernal, 458

U.S. at 867 (quoting Washington v. Texas, 388 U.S. 14, 16

(1967)); Dorsey, 16 M.J. at 8.

Although the M.R.E. 412 balancing test bears

resemblance to the M.R.E. 403 balancing test, the two tests

are distinct.  This is evident from the text and intent of

the two rules.

M.R.E. 412(c)(3) states:

> If the military judge determines on the basis of the
> hearing described in paragraph (2) of this subdivision
> that the evidence that the accused seeks to offer is
> relevant and that the probative value of such evidence
> outweighs the danger of unfair prejudice, such
> evidence shall be admissible in the trial to the
> extent an order made by the military judge specifies
> evidence that may be offered and areas with respect to
> which the alleged victim may be examined or cross-
> examined.

(Emphasis added.)


The M.R.E. 403 balancing test states:

> Although relevant, evidence may be excluded if its
> probative value is substantially outweighed by the
> danger of unfair prejudice, confusion of the issues,
> or misleading the members, or by considerations of
> undue delay, waste of time, or needless presentation
> of cumulative evidence.

(Emphasis added.)


The balancing test contained in M.R.E. 412(c)(3) differs in

two critical respects from that contained in M.R.E. 403.

First, under the M.R.E. 403 balancing test, a presumption

of admissibility exists since the burden is on the opponent

18

to show why the evidence is inadmissible.  M.R.E. 403 is a rule of inclusion.

In contrast, M.R.E. 412 is a rule of exclusion.  The burden of admissibility shifts to the proponent of the evidence to demonstrate why the evidence is admissible. United States v. Greaves, 40 M.J. 432, 438 (C.M.A. 1994)(citing United States v. Elvine, 16 M.J. 14 (CMA 1983)); 1 Stephen A. Saltzburg et al., Military Rules of Evidence Manual 4-189-90 (5th ed. 2003).  Thus, the two rules lean in different directions: i.e., toward inclusion in the case of M.R.E. 403 and toward exclusion in the case of M.R.E. 412(c)(3).

Second, M.R.E. 403 is generally applicable to evidence offered by either the government or the accused.  To exclude evidence under M.R.E. 403 the military judge must find "substantial prejudice" leading to one of a number of enumerated harms, including "unfair prejudice" to the accused.  M.R.E. 412(a)'s general rape shield rule is applicable to both parties.  However, in contrast to M.R.E. 403, the balancing test that M.R.E. 412(c)(3) establishes for exceptions to the general rule contemplates "evidence that the accused seeks to offer[.]"  M.R.E. 412(c)(3).

Thus, M.R.E. 412(c)(3) requires the military judge to determine "on the basis of the hearing described in

paragraph (2) of this subdivision that the evidence that <u>the accused seeks to offer</u> is relevant and that the probative value of such evidence outweighs the danger of unfair prejudice[.]" M.R.E. 412(c)(3)(emphasis added). It would be illogical if the judge were to evaluate evidence "offered by the accused" for unfair prejudice to the accused. Rather, in the context of this rape shield statute, the prejudice in question is, in part, that to the privacy interests of the alleged victim. <u>Sanchez</u>, 44 M.J. at 178 ("[I]n determining admissibility there must be a weighing of the probative value of the evidence against the interest of shielding the victim's privacy.").

As a result, when balancing the probative value of the evidence against the danger of unfair prejudice under M.R.E. 412, the military judge must consider not only the M.R.E. 403 factors such as confusion of the issues, misleading the members, undue delay, waste of time, needless presentation of cumulative evidence, but also prejudice to the victim's legitimate privacy interests.[3] See <u>Sanchez</u>, 44 M.J. at 178; 2 Christopher B. Mueller & Laird C. Kirkpatrick, <u>Federal Evidence</u> § 160 (2d ed. 1994).

---

[3] M.R.E. 412 does not wholly supplant M.R.E. 403 since the military judge may exclude evidence on M.R.E. 403 grounds even if that evidence would otherwise be admissible under M.R.E. 412.

C.  As Applied in Appellant's Case

Having considered the textual framework of M.R.E. 412 and established our analytic framework, our next step is to apply this analysis to Appellant's case.[4]  We review a judge's decision to exclude evidence under M.R.E. 412 for abuse of discretion.

Appellant argued at trial that M.R.E. 412 was not applicable to his case based on the arguments presented in Issue I of this opinion.  Arguing in the alternative, Appellant offered the testimony of MB under M.R.E. 412 because it went "directly to ["LG's"] credibility and motive to fabricate."  However, other than maintaining that MB's testimony went to LG's credibility in a general sense, defense counsel failed to articulate a specific theory or motive as to why LG might have fabricated the allegations against Appellant.  In response, trial counsel argued "there's no evidence of motive, so our position is that it is not relevant."

As a threshold matter, the judge correctly determined that M.R.E. 412 was the applicable rule of evidence.  As noted above, M.R.E. 412 applies not only to propensity evidence, but also to evidence of the victim's "other

---

[4] Consistent with the purposes of M.R.E. 412, the trial record of the M.R.E. 412(b) hearing is sealed.

sexual behavior." An allegation of sexual molestation by the child LG was babysitting fits within the category of "other sexual behavior." That is not to say that M.R.E. 412 bars inquiry regarding a victim's alleged sexual misconduct. Rather, the M.R.E. 412 is intended to shield a victim from having their own sexual conduct and history placed at issue, unless the military judge first determines in the closed hearing that such inquiry is warranted by the rule. The military judge did just that in Appellant's case, holding a closed hearing concerning MB's putative testimony.

During the closed hearing, the military judge noted that MB made his allegations eight months after LG made her allegations against Appellant. When pressed by the military judge as to how this evidence related to any motive to fabricate, defense counsel responded as follows: "Your honor, she made her allegations months after this supposed relationship with my client started and yet the same kind of principle-and it does go directly--." After hearing this evidence, the judge ruled MB's testimony was not relevant and, therefore, inadmissible. Specifically, the judge stated:

> This evidence is not relevant to the findings portion, regardless of its truth. And there's serious question as to whether it's true based upon the lack of

> credibility of [MB], specifically the circumstances under which this was disclosed after he, himself was in trouble. But that notwithstanding, because that would not be determinative of the issue as far as this Court is concerned, as to whether the evidence would get before the court members. I have to assume for the purpose of the motion that the allegations that [MB] makes are true. Nevertheless, they are not relevant and they're clearly not constitutionally required under these circumstances.

Notably, while expressing reservations about the veracity of MB's putative testimony, the judge correctly identified credibility as an issue for the members. In applying M.R.E. 412, the judge is not asked to determine if the proferred evidence is true; it is for the members to weigh the evidence and determine its veracity. Rather, the judge serves as gatekeeper deciding first whether the evidence is relevant and then whether it is otherwise competent, which is to say, admissible under M.R.E. 412. Thus, in the case of the third exception argued by Appellant, the judge determined whether admission of MB's allegations would be constitutionally required if there was evidence sufficient to support a finding that they were true. United States v. Platero, 72 F.3d 806, 812 (10th Cir. 1995).[5]

---

[5] "In deciding a competency question, the Judge is not usurping the function of the jury. The Judge is not addressing the merits of the case and deciding whether one side or the other is truthful. Rather, the Judge is

23

While evidence of a motive to fabricate an accusation is generally constitutionally required to be admitted, the alleged motive must itself be articulated to the military judge in order for him to properly assess the threshold requirement of relevance. See Dorsey, 16 M.J. at 4. Before this Court, Appellant argues that LG fabricated allegations against him in order to preemptively discredit any allegations that MB might ultimately have made regarding LG's sexual conduct with MB. However, at trial, when pressed by the military judge for a theory of admissibility, defense counsel stated only that MB's testimony went "directly to ["LG's"] credibility and motive to fabricate". The question remained whether Appellant's proffer was adequate to show support for his theory. Sanchez, 44 M.J. at 182 (Everett and Gierke, JJ., concurring).

In the context of M.R.E. 412, it was within the judge's discretion to determine that such a cursory argument did not sufficiently articulate how the testimony reasonably established a motive to fabricate. Moreover, based on the analytic structure of M.R.E. 412, in ruling on relevancy the military judge was not also required to

assuring that the evidence meets the usual evidentiary standards." Platero, 72 F.3d at 812 (citation omitted).

24

United States v. Banker, No. 03-0128/AF

address the constitutional exception or the application of the balancing test. Therefore, without more, it was within the discretion of the military judge to conclude that the offered testimony was not relevant. As a result, we hold the military judge did not abuse his discretion in refusing to admit MB's testimony since Appellant did not meet his burden of proving why the M.R.E. 412 prohibition should be lifted.

SUPPLEMENTAL ISSUE

While this case was under review in this Court, Appellant filed a motion for grant of review of a supplemental issue.[6] That motion is granted. Therefore, notwithstanding our resolution of the granted issues, we remand the case to the Court of Criminal Appeals for that court's consideration of the supplemental issue in light of this Court's decision in United States v. Marcum, __ M.J. __ (C.A.A.F. 2004).

DECISION

The decision of the United States Air Force Court of Criminal Appeals is set aside. The record of trial is returned to the Judge Advocate General of the Air Force for

---

[6] WHETHER APPELLANT'S CONVICTION FOR VIOLATING ARTICLE 125, UCMJ, BY ENGAGING IN CONSENSUAL SODOMY MUST BE SET ASIDE IN LIGHT OF THE UNITED STATES SUPREME COURT'S HOLDING IN LAWRENCE V. TEXAS, 123 S.CT. 2472 (2003).

25

remand to that court for consideration of the supplemental issue and for action not otherwise inconsistent with this opinion.

EFFRON, Judge (concurring in part and in the result):

I agree with the lead opinion that: (1) Military Rule of Evidence 412 [hereinafter M.R.E.] is not limited to cases involving nonconsensual sexual offenses; (2) in considering whether evidence is admissible under the rule, the military judge must first consider whether the evidence is relevant; (3) if the evidence is not relevant, it is not admissible; and (4) the military judge in this case did not err in concluding that the evidence offered by defense was inadmissible because it was not relevant.

After concluding that the military judge did not err, the lead opinion offers a variety of observations regarding the treatment of relevant evidence under M.R.E. 412. Although there are many instances in which it is appropriate for an appellate court to discuss matters beyond the narrowest possible holding, a degree of caution may be in order when dealing with a developing area of law that is highly fact-dependent. The treatment of relevant evidence under M.R.E. 412 is such an area.

M.R.E. 412 involves numerous unresolved interpretative matters. Perhaps the most difficult aspect of the rule involves the issue of when relevant evidence that is otherwise excluded under the rule must nonetheless be admitted because exclusion of the evidence "would violate the constitutional rights of the accused." M.R.E. 412(b)(1)(C). See, e.g., 1 Stephen A.

Saltzburg et al., <u>Military Rules of Evidence Manual</u> 4-186-88 (5th ed. 2003).  Stephen A. Saltzburg et al., 2 <u>Federal Rules of Evidence Manual</u> 412-7-10 (8th ed. 2002).  This is an area in which most cases are likely to involve evidentiary considerations common to both civilian and military trials.  In that context, we should not constrain military judges in future trials from considering a wide range of judicial opinions from other courts, as well as scholarly works, when confronting M.R.E. 412 relevancy issues not governed by our precedents.  Under these circumstances, I respectfully decline to join that portion of the lead opinion that addresses admissibility of relevant evidence under M.R.E. 412.