CORRECTED COPY

# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
MULLIGAN, FEBBO, and WOLFE
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Private E2 EMILIO J. SCHELMETTY**
**United States Army, Appellant**

ARMY 20150488

Headquarters, United States Army Alaska
Samuel Schubert, Military Judge
Lieutenant Colonel Rana D. Wiggins, Acting Staff Judge Advocate (pretrial)
Colonel Erik L. Christiansen, Staff Judge Advocate (post-trial)

For Appellant:  Major Patrick Scudieri, JA (argued); Colonel Mary J. Bradley, JA; Major Christopher D. Coleman, JA (on brief); Major Patrick Scudieri, JA; Major Christopher D. Coleman, JA (on reply brief).

For Appellee:  Major Edward J. Whitford (argued); Colonel Mark H. Sydenham, JA; Lieutenant Colonel A.G. Courie III, JA; Major Anne C. Hsieh, JA; Major Edward J. Whitford, JA (on brief).

30 June 2017

---------------------------------
MEMORANDUM OPINION
---------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

WOLFE, Judge:

In this appeal we address whether the military judge abused his discretion in limiting the introduction of post-assault sexual behavior evidence by the alleged victim, TJ.  What is unusual about this case, and what makes appellant's position on appeal difficult, is that the defense never filed a motion under Military Rule of Evidence [hereinafter Mil. R. Evid.] 412.  We also address appellant's claim that the military judge erred by preventing the defense from admitting the remaining portions of a statement by appellant admitted by the government at trial.[1]

---

[1] We have considered appellant's other assigned error that the evidence is legally and factually insufficient to support the finding of guilty and find the argument without merit.  Upon consideration, we likewise find the matters personally raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), lack merit.

**BACKGROUND**

The events surrounding this case all took place in a home in the early morning hours of January 1st, 2014 following a New Year's Eve party. Two versions of events were admitted at trial.[2] The first was through partially redacted statements that appellant made to the Army Criminal Investigation Command (CID). The second was through the testimony of the victim, TJ.

Appellant told CID that that there had been no prior sexual relationship between him and TJ. He stated that after he climbed in the bed where TJ was sleeping, he performed oral sex on her while she was still asleep. He then said that "[s]he woke up somewhere between me doing oral sex and having sex with her." After she awoke, TJ asked if appellant was "JP." JP was TJ's boyfriend and appellant's friend. Appellant then stated he told her "yes" that he was JP. He then said she kicked him out of the room when she figured out who he was. He admitted that she was intoxicated, that he had misled her because "I didn't want to stop," and that he had sexually assaulted her.

TJ, on the other hand, testified that she was awake. Consistent with her prior statement to CID, she testified that when appellant entered her room she thought he was her boyfriend JP. She asked appellant if he was in fact JP several times and was told "yes." She said she kicked him out of the bed when she realized his false identity.

The panel was presented with alternative charges alleging sexual assault. The first specification, based on the testimony of TJ, alleged a sexual assault in which appellant mislead TJ into thinking he was another person. The second specification, based on appellant's admissions to CID, alleged that TJ was "asleep, unconscious, or otherwise unaware that the sexual act was occurring."

The panel rejected *both* theories and convicted appellant of attempting to sexually assault TJ while she was "asleep, unconscious, or otherwise unaware." The panel then sentenced appellant to a dishonorable discharge, four months confinement, total forfeiture of pay and allowances, and reduction to the grade of E1.[3] The convening authority approved the sentence.

---

[2] At his general court-martial, a panel of officers convicted appellant, contrary to his pleas, of one specification of attempted sexual assault in violation of Article 80, Uniform Code of Military Justice, 10 U.S.C. § 880 (2012) [hereinafter UCMJ].

[3] Corrected

## LAW AND DISCUSSION

### A. *Military Rule of Evidence 412*

Appellant asks us to review the military judge's decision to exclude evidence of post-assault behavior by the alleged victim. Appellant told CID that after the alleged assault, TJ came down stairs and engaged in consensual sexual activity with him. During the closed Mil. E. Evid. 412 hearing TJ flatly denied this had happened. Accordingly, the only evidence of this behavior would be from appellant (either through his testimony or through the admission of his full statement to CID).

### *1. Other Sexual Behavior*

As a threshold matter, we address whether this post-assault sexual behavior is "other sexual behavior" that falls within the general prohibition of Mil. R. Evid. 412(a)(1). We find that it is.

According to appellant, TJ kicked him out of the bedroom upon determining his true identity and because she feared her boyfriend would discover them in bed. He then went downstairs. Shortly afterwards, TJ came downstairs and initiated consensual sexual intercourse with appellant on the couch. We do not see this as being part of the *res gestae* of the offense and therefore agree with the military judge that this was "other sexual behavior" that fell squarely within Mil. R. Evid. 412.

Appellant points us to our own decision in *United States v. Gaddy*. ARMY 20150227, 2017 CCA LEXIS 179 (Army Ct. Crim. App. 20 Mar. 2017). In that case, this panel found that the military judge erred when he excluded under Mil. R. Evid. 412 evidence that appellant and the alleged victim "engaged in highly sexualized dancing that simulated sex" and then immediately proceeded to, under appellant's theory, have consensual sexual intercourse. We found the dancing not to have been "other sexual behavior" because it was all part of the same course of conduct. *Id.* at *5-*6.

This case, however, is distinguishable from *Gaddy* for two reasons. Here the conduct in question was *post*-assault behavior. At the time of the alleged post-assault sexual intercourse appellant had committed a criminal act with a guilty mind or he had not. In *Gaddy*, by contrast, the pre-assault behavior went directly to the accused's state of mind (i.e., whether he reasonably and honestly believed there was

consent).  Also unlike in *Gaddy*, the claimed post-assault sexual intercourse was temporally and physically separate from the charged offense.

### 2. *The Military Rule of Evidence 412 Motion*

Our review of appellant's assignment of error is frustrated by missteps at the trial level.  Mil. R. Evid. 412(c)(1)(A) requires that the "party intending to offer evidence under [the rule] *must* file a written motion . . . *specifically describing the evidence and stating the purpose for which it is offered. . . ."*  (emphasis added).

Here, no written motion was filed.  Rather, given the absence of a defense motion, the government made an oral motion to preclude the defense from introducing evidence of other sexual behaviors by the victim.  At that point, the defense counsel stated that he wanted to introduce evidence of TJ's post-assault sexual behavior.  Notwithstanding the absence of a motion, the military judge conducted a Mil. R. Evid. 412 closed hearing because he found "good cause."  We disagree with the military judge's finding for two reasons.

First, there is no exception to the requirement for the filing of a written motion.  While the rule allows "for good cause shown . . . a different time for filing" it does not allow for oral motions.  412(c)(1)(A).  Within the context of the rule, this makes sense.  The same evidence under Mil. R. Evid. 412 may have permissible and impermissible uses.  The specificity required by the motion ensures that the military judge knows exactly what the moving party is requesting and why.  Additionally, the motion is not merely the means of providing information to the military judge.  The motion also provides due process (notice) to the alleged victim.  *See* Mil. R. Evid. 412(c)(1)(B).

Second, there was no "good cause shown."  The evidence in question was clearly known to the defense counsel before trial—it was included in appellant's written statements to CID.  Nonetheless, the military judge stated that he had found "good cause despite neither side providing any notice for 412 evidence."  The good cause, according to the military judge, was that he had been made aware of the issue that morning and that counsel "had figured it out."  We are somewhat troubled by this reasoning.  Obviously, a military judge is only aware of a Mil. R. Evid. 412 issue when it is raised in the course of the proceedings.  If neglecting to file a motion pretrial is "good cause," then there is little that would not constitute "good cause."

4

Nonetheless, allowing appellant to orally raise a Mil. R. Evid. 412 motion without good cause is likely now the law of the case. Neither the government nor special victim counsel directly questioned the military judge's ruling, nor did they pursue appellate options. *See* UCMJ Art. 6b. However, it does present us with a fractured appellate record. Appellant asks us to review the military judge's ruling on a motion that was never actually made.

Moreover, by not holding the moving party to the requirements of the rule, the military judge forced himself to rule on a difficult motion without adequate briefing and without time for contemplation.[4]

Two examples may help explain the problem we face.

First, on appeal appellant asks us to find that the conduct in question was admissible under the "consent" exception in Mil. R. Evid. 412(b)(1)(B). Indeed, this may be the most relevant exception. However, this exception was never presented or articulated to the military judge. The defense at trial argued only the "constitutionally required" exception; and even then only on an exceedingly narrow basis.

Second, on appeal appellant asserts new theories as to why the post-assault evidence was constitutionally required. Specifically, appellant asserts new reasons why the claimed post-assault sexual intercourse was evidence of a motive for TJ to fabricate allegations of assault. These theories (involving her pregnancy and fears of being caught cheating on her boyfriend) were never raised or litigated at trial. Again, this is why the rule requires written motions "*specifically describing the evidence and stating the purpose for which it is offered.*" Mil. R. Evid. 412(c)(1)(A) (emphasis added).

---

[4] The military judge excluded the Mil. R. 412 evidence, in part, because he did not find by a preponderance that the subsequent contact between appellant and TJ had happened. This was an erroneous view of his role as an evidentiary gate keeper. *See United States v. Roberts*, 69 M.J. 23, 27 (C.A.A.F. 2010) ("In applying M.R.E. 412, the judge is not asked to determine if the proferred evidence is true . . . . Rather, the judge serves as gatekeeper deciding first whether the evidence is relevant and then whether it is otherwise competent, which is to say, admissible under M.R.E. 412.") (quoting *United States v. Banker*, 60 M.J. 216, 224 (C.A.A.F. 2004)). By holding the moving party to the strictures of the rule, either by requiring briefing by the parties or by providing himself time to research the issue, the military judge may have avoided this error.

On appeal appellant asks us to consider these new arguments. We view our role more narrowly than does appellant. Our job is to determine whether the trial judge erred. For purposes of Mil. R. Evid. 412, this means evaluating the trial judge's ruling based on the evidence introduced during the closed hearing, the motion (or, here, the arguments) of the moving party, and the law. Often, and in this case, when ruling on pretrial motions the military judge has little information about the evidence or the defense theory of the case. We cannot find the military judge erred in a Mil. R. Evid. 412 ruling based on an exception to the rule that was never asserted and based on theories of the evidence that were never advanced.

To be sure, other rules do require the military judge to *sua sponte* instruct on issues even when not specifically asserted by a party. For example, Rule for Court-Martial [hereinafter R.C.M.] R.C.M. 920(e)(2) requires military judges to instruct on lesser-included offenses raised by the evidence regardless of whether a party requests such an instruction. Mil. R. Evid. 412, however, is different in several regards. To begin with, the plain language of the rule puts the burden on the moving party to show they meet the requirements for an exception under the rule. Also, with *pretrial* motions (unlike instructions to the panel) the military judge is often unaware of the parties' theories of the case and the evidence to be admitted. Finally, when a military judge admits evidence under Mil. R. Evid. 412 based on reasons that were never articulated in a motion, the alleged victim is not provided the notice (i.e., due process) that is required under the rule.

Accordingly, we will limit our analysis to facts and arguments that were articulated by the defense at trial. That is, we do not consider those exceptions to the rule or theories of the case that were advanced by appellant for the first time on appeal.

### 3. Analysis

As there was no written motion, we will look to the defense counsel's brief summation at the end of the closed Mil. R. Evid. 412 hearing. Appellant's counsel, citing the constitutionally required exception, offered a narrow basis for the admissibility of the evidence. Appellant was charged with inducing by artifice a belief by the victim that he was someone else in order to have intercourse. Appellant's counsel claimed that evidence of post-assault intercourse was necessary because it went directly to appellant's defense that TJ knew who appellant was during the assault. The defense argued that by seeking appellant out post-assault, TJ must have clearly known his identity. Again, TJ denied this happened. The defense specifically stated that the issue was "not an issue of consent."

6

So limited, our decision here is easy.  The court-martial acquitted appellant of sexual assault "by inducing a belief by artifice . . . that the accused was another person."  Accordingly, there can be no prejudice from the exclusion of evidence of a defense that was applicable only to an offense for which appellant was acquitted.  Accordingly, we do not find, even assuming the military judge erred in denying appellant's Mil. R. Evid. 412 motion, that appellant is entitled to relief.

*B. Completing the Record*

Appellant also assigns as error that the military judge improperly allowed the government to introduce redacted versions of appellant's sworn statements to Army CID.  Consistent with the military judge's Mil. R. Evid. 412 ruling discussed above, the statements redacted any mention of TJ's post-assault sexual behavior.  At trial, appellant argued that full statements should be admitted to "complete the record" under both Mil. R. Evid 106 and 304(h)(2).  Accordingly, any error in admitting the redacted statements is preserved.

For purposes of this analysis, we assume the military judge's ruling under Mil. R. Evid. 412 was correct.  If the ruling was incorrect, then there would be no basis to exclude the information from the statements.  Thus we limit our discussion here to whether the military judge erred in prohibiting the admission of evidence notwithstanding that it was properly excluded under Rule 412.

It seems clear to us that Mil. R. Evid. 412 trumps Mil. R. Evid. 106 and 304(h)(2).  That is, if a statement would be admissible under Rule 304(h)(2), but is inadmissible under Rule 412, it remains inadmissible.  For Rule 412 to have any effect it has to apply to evidence that otherwise would have been admissible.  Put differently, a rule that serves to exclude evidence only when it was already inadmissible would serve no purpose.

Unlike Mil. R. Evid. 412, which has its origins in statute,[5] we note that Mil. R. Evid. 304(h)(2) is a creature solely of regulation.  The rule has no federal counterpart and is not based on statute or constitutional law.  Rule 304(h)(2) itself

---

[5] *See* Privacy Protection for Rape Victims Act of 1978, Pub. L. No. 95-540, 93 Stat. 2046 (1978) (establishing Federal Rule of Evidence 412); *see also* Mil. R. Evid. 1102 (unless the President takes action to the contrary, "[a]mendments to the Federal Rules of Evidence shall apply to the Military Rules of Evidence 18 months after the effective date of the amendments. . . .").

directly contradicts the prohibition of admitting hearsay under Mil. R. Evid. 801 which operates to prohibit such hearsay in civilian trials throughout the country.[6]

However, our determination that Mil. R. Evid. 412 operates to exclude evidence that would have been admissible under Mil. R. Evid. 106 and 304(h)(2) does not end the inquiry.  If operation of Mil. R. Evid. 412 would result in the admission of a statement whose original meaning and intent is lost or misleading we would encounter a second problem.  We would agree with appellant's argument that Mil. R. Evid. 412 cannot be used simultaneously as a shield to protect the victim's privacy and a sword that allows for the introduction of misleading evidence which the defense is prohibited from explaining or putting in context.

Appellant argues that in such a circumstance, the evidence that is prohibited under Rule 412 should nonetheless be admitted.  We disagree.  If a statement becomes misleading when it is redacted to exclude evidence under Mil. R. Evid. 412 the answer is not to breach Mil. R. Evid. 412 by finding an unenumerated exception to the rule.  Rather, the answer is not to admit the statement in the first place.  Simply put, if the exclusion of Mil. R. Evid. 412 evidence has made the statement such that its probative force is substantially outweighed by the danger of unfair prejudice, the statement should be excluded under Mil. R. Evid. 403.

Applying this analysis to the present case, and setting aside whether appellant has preserved the Mil. R. Evid. 403 issue for appeal, we do not find that the redacted statements created a misleading document.  The excluded portions of the statement were factually and temporally separate from the admitted portion.  The force of appellant's admissions that he had sex with TJ while (he at least believed) she was sleeping was not undermined by his statement[7] that she later initiated sexual acts with him.

---

[6] Article 36, UCMJ requires the president ("shall") to implement rules of evidence "generally recognized in the trial of criminal cases in the United States district court . . . . " unless he considers it "impracticable."  Going back to at least to 1951—that is, predating both the Military Rules of Evidence and Federal Rules of Evidence— the Manual for Courts-Martial, ¶ 140a, MCM (1951) provided that "[i]f only part of a confession or admission . . . is shown, the defense by cross-examination or otherwise may show the remainder of the statement."

[7] Appellant claimed that TJ initially kicked him out of the room because she was afraid her boyfriend would discover them.  He then claimed that afterwards, TJ came downstairs and initiated sex on a couch in an open living room and next to a sleeping individual.

## CONCLUSION

Finding no error, we AFFIRM the findings of guilty and the sentence.

Senior Judge MULLIGAN and Judge FEBBO concur.

FOR THE COURT:

JOHN P. TAITT
Chief Deputy Clerk of Court