UNITED STATES, Appellee,

v.

Charlie SCOTT, Private First Class,
U.S. Army, Appellant.

No. 98–0987.
Crim.App. No. 9502201.

U.S. Court of Appeals for
the Armed Forces.

Argued May 12, 1999.

Decided Aug. 19, 1999.

CRAWFORD, J., delivered the opinion of the Court, in which COX, C.J., and SULLIVAN, GIERKE, and EFFRON, JJ., joined.

For Appellant: *Captain David S. Hurt* (argued); *Colonel John T. Phelps II, Lieutenant Colonel Adele H. Odegard,* and *Major Leslie A. Nepper* (on brief); *Captain Paul J. Perrone, Jr.*

For Appellee: *Captain Joseph A. Pixley* (argued); *Colonel Russell S. Estey, Lieutenant Colonel Eugene R. Milhizer,* and *Captain Mary E. Braisted* (on brief).

Judge CRAWFORD delivered the opinion of the Court.

Contrary to his pleas, appellant was convicted by officer and enlisted members of attempted escape from confinement, fraudulent enlistment, desertion (2 specifications), escape from confinement, rape (6 specifications), larceny, wrongful appropriation of an automobile, robbery, robbery with a firearm (2 specifications), housebreaking, wrongful possession of a military identification card, wrongful and willful impersonation of a noncommissioned officer, escape from custody (2 specifications), indecent assault, and kidnapping (2 specifications).[1] The convening authority approved the sentence of a dishonorable discharge, 40 years' confinement, total forfeitures, and reduction to the lowest enlisted grade. The Court of Criminal Appeals affirmed the findings and sentence in an unpublished opinion on May 29, 1998. We granted review of the following issue:

> WHETHER THE MILITARY JUDGE COMMITTED PLAIN ERROR BY ALLOWING THE GOVERNMENT TO PRESENT EXPERT TESTIMONY ON SENTENCING AS TO APPELLANT'S FUTURE DANGEROUSNESS BECAUSE THE EXPERT UTILIZED INFORMATION OBTAINED FROM APPELLANT'S PSYCHIATRIC EVALUATIONS IN VIOLATION OF APPELLANT'S FIFTH AND SIXTH AMENDMENT RIGHTS.

We also specified the following issue:

> WHETHER TRIAL DEFENSE COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL BY ALLOWING THE GOVERNMENT TO PRESENT EXPERT TESTIMONY ON SENTENCING AS TO APPELLANT'S FUTURE DANGEROUSNESS BECAUSE THE EXPERT UTILIZED INFORMATION OBTAINED FROM APPELLANT'S PSYCHIATRIC EVALUATIONS IN VIOLATION OF APPELLANT'S FIFTH AND SIXTH AMENDMENT RIGHTS.

For the reasons set forth below, we decide against appellant on both issues.

## FACTS

On August 14, 1992, appellant was apprehended by civilian authorities for felony theft and held for a psychiatric examination to determine his competence to stand trial. He escaped and was recaptured by United States Marshals. On September 17, 1992, the United States Magistrate held a hearing and found appellant competent to conduct his initial appearance in federal court. On September 23, 1992, he was transferred into

---

1. Articles 80, 83, 85, 95, 120, 121, 122, 130, and 134, Uniform Code of Military Justice, 10 USC §§ 880, 883, 885, 895, 920, 921, 922, 930, and 934, respectively.

United States military custody. Appellant's federal indictment was dismissed, and he was charged as noted above. Again, appellant escaped on March 16, 1993, and was recaptured on September 8, 1995.

During a pre-sentencing Article 39(a) [2] session, the Government indicated that it would call Dr. Ann Burgess to testify as to the "rehabilitative potential of the accused." Assistant trial counsel stated that Dr. Burgess was "going to discuss the factors that lead to recidivism" by sex offenders and would testify that appellant lacked rehabilitative potential. The military judge noted that, earlier, Dr. Burgess had been qualified as an expert in the area of rape trauma.

However, defense counsel stated:

We would definitely object to her testifying in that capacity [on rehabilitative potential]. She has not even so much as interviewed PFC Charlie Scott and cannot therefore testify about his rehabilitative potential. Your Honor, we would cite RCM 1001. It looks like it's—I think it's 1001(b)5(c), Your Honor.

The judge, citing *United States v. Stinson*, 34 MJ 233 (CMA 1992), indicated that it was not necessary for an expert to conduct an interview to testify about a person. Dr. Burgess then testified, outside of the presence of the members, as to her studies concerning recidivism by sexual offenders. She was cross-examined extensively as to these studies. After the judge ensured she was not going to testify that appellant "should go to jail," the judge overruled the defense objection to Dr. Burgess' testimony as to recidivism and the potential for rehabilitation of sexual offenders. He noted that the defense concern about Dr. Burgess' failure to interview appellant personally would go to the weight of her testimony.

Dr. Burgess testified before the court members that she never talked to appellant, his family or friends, or even to the doctor that conducted the competency evaluation of appellant. Though she reviewed statements made by appellant, she never testified as to the content of any of those statements. Dr. Burgess testified as follows:

A. I have three brief documents from 1987 that—I have I think it's a statement by him. It's an unsworn statement, and it's an evaluation done in November of 1987, and then from 1992 I have a psychiatrist's report of an examination that he did in 1982 (sic) and then I have the results of that from December 16th, 1992.

Q. In your opinion is the accused at a high risk or a low risk for re-offense?

A. My opinion . . .

ADC. I object, Your Honor.

MJ. Overruled. Go on.

A. My opinion is he is at high risk for re-offense.

Q. And why is that?

A. That is based on the evidence on those three variables, that impulsivity. The evidence of that is his escape behavior in terms of four actually—one attempt and three completed. That's impulsivity. On anti-social behavior, the variables there are evidence of lying, evidence of manipulation, evidence of deception and I found evidence there of lying in terms of entrance into the military, also deception in terms of impersonating people that he was not, and manipulation, I found evidence of that in just reading one of the military records, and escalation of aggression. There was that in the offenses.

Q. Is there an absolute cure for a sexual offender?

A. There is no absolute cure, not only sex offenders but many other situations, but there is always the hope of rehabilitation to reduce the risk. What we try to do in any health situation is to reduce the risk of that behavior occurring again.

She concluded by stating that appellant exhibits several of the various risk factors for re-offense, including his age—earlier intervention being better, and the "multiple types of assault."

**2.** UCMJ, 10 USC § 839(a).

On cross-examination, the defense elicited that she was being paid $8,000 for 13 days' work. She testified that part of the basis for her opinion was her interviews with the various rape victims in this case. She also admitted that the documents she examined were "provided ... by the government."

Later, on redirect examination, she noted that these documents included a mental status evaluation in September 1987 and another one in 1992 completed by Dr. John Sparks. Defense counsel's objection on the basis of hearsay was overruled by the judge. Neither the direct, cross, or redirect examination produced any evidence that Dr. Burgess had access to privileged portions of a psychiatric examination of appellant.

## DISCUSSION

■ Servicemembers are guaranteed the right to effective assistance of counsel, regardless of indigence. Art. 27, UCMJ, 10 USC § 827; *United States v. MacCulloch*, 40 MJ 236, 238 (CMA 1994). In determining whether there is a violation of this right, the Supreme Court and this Court have applied a two-pronged test. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *United States v. Scott*, 24 MJ 186 (CMA 1987). An appellant must first show that "counsel's representation fell below an objective standard of reasonableness," 466 U.S. at 688, 104 S.Ct. 2052; and second, if so, that there was prejudice. *Id.* at 692, 104 S.Ct. 2052.

■ In *United States v. Loving*, 41 MJ 213, 248–49 (1994), this Court adopted the clarification of *Strickland* made by *Lockhart v. Fretwell*, 506 U.S. 364, 369, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993), as follows:

[W]hen ineffective assistance is alleged, "a criminal defendant alleging prejudice must show 'that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.' "

■ The *Strickland* Court emphasized that "[j]udicial scrutiny of counsel's performance must be highly deferential." *Supra* at 689, 104 S.Ct. 2052. "[C]ounsel is strongly presumed" to have given "adequate assis-tance." *Id.* at 690, 104 S.Ct. 2052. In applying this test, an appellate court should seek to avoid second-guessing counsel's actions and presume counsel are competent.

Recently, in *Mitchell v. United States*, 526 U.S. 314, 119 S.Ct. 1307, 143 L.Ed.2d 424 (1999), the Supreme Court held that a defendant's right under the Self–Incrimination Clause of the Fifth Amendment applies during sentencing in a criminal case. Article 31, UCMJ, 10 USC § 831, which similarly prohibits compulsory self-incrimination, likewise makes no distinction as to pretrial and trial stages. Additionally, the Sixth Amendment right to counsel codified under Article 27 applies to the pretrial, trial, and post-trial stages.

The disclosure requirements in the Manual for Courts–Martial, United States (1998 ed.), protect a military defendant's rights. Mil. R.Evid. 304(d)(1), Manual, *supra*, provides for government disclosure to the defense of all statements made by the accused which are relevant to the case and within the control of the armed forces. Likewise, Mil. R.Evid. 304(d)(4) requires any motion to suppress or objection to statements made by the accused to be submitted prior to the pleas. These motions or objections may be deferred for good cause.

■ We begin from the presumption that defense counsel were well aware of the charges against appellant and planned a competent defense accordingly. Based on the evidence presented, we cannot say that the representation appellant received was objectively unreasonable. Furthermore, given the crime spree waged by appellant, a 40–year sentence is far from excessive. Therefore, even assuming sub-standard performance, appellant fails to show how he could have been prejudiced in sentencing.

■ As for the granted issue, even when Dr. Burgess testified that her opinion in part was predicated on "a psychiatrist's report of an examination" done on appellant in 1992, the defense never objected to her use of any of appellant's psychiatric evaluations. Nor did the defense object on the basis of privilege, involuntariness, or any other Fifth or Sixth Amendment grounds. On the con-

trary, the defense's only ground for objecting to Dr. Burgess was that she did not have a basis for giving an opinion concerning appellant's rehabilitative potential—*i.e.*, that he was "at high risk for re-offense"—because she had not interviewed him. Consequently, appellant's instant objections based on the Fifth and Sixth Amendments were forfeited, absent plain error. *See* Mil.R.Evid. 103. Furthermore, we can presume that counsel realized there was no valid objection on those grounds if the question of incompetency or lack of mental responsibility was raised by the defense and litigated. *See United States v. Babbidge*, 18 USCMA 327, 40 CMR 39 (1969).

■ In addition, the judge was correct in overruling the objections based on hearsay, *see United States v. Raya*, 45 MJ 251 (1996), and Dr. Burgess' failure to interview appellant. *Stinson*, 34 MJ 233. Dr. Burgess' testimony was legitimate sentencing evidence. And appellant's claim that Dr. Burgess had improperly used the full sanity board report is unsubstantiated. In fact, much of what Dr. Burgess said about appellant's impulsivity, manipulation, and lying was evident on the face of the offenses for which appellant had already been found guilty.

■ Thus, there was no error, plain or otherwise. *United States v. Powell*, 49 MJ 460 (1998). Furthermore, even assuming error, the testimony of Dr. Burgess did not materially prejudice a substantial right of appellant. *Id.* The gist of Dr. Burgess' testimony was that appellant would be a recidivist. Appellant was convicted of more than 20 offenses committed over a 2–year period of time. These included two successful escapes from confinement and six rapes. When the overwhelming evidence in this case is considered, Dr. Burgess' testimony is only a small fraction of the sentencing evidence considered by the members.

The decision of the United States Army Court of Criminal Appeals is affirmed.